**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE**

| | |
|---|---|
| M. ILHAN UZEL, DMS, DSC, d/b/a MERCER CENTER FOR IMPLANTS AND PERIODONTICS AT PRINCETON,<br><br>Plaintiff,<br><br>v.<br><br>THE HANOVER INSURANCE GROUP, INC. d/b/a THE HANOVER, AND CITIZENS INSURANCE COMPANY OF AMERICA,<br><br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, M. Ilhan Uzel, MDM, DSc, d/b/a Mercer Center for Implants and Periodontics at Princeton ("Plaintiff") brings this Complaint against The Hanover Insurance Group, Inc. d/b/a The Hanover, and Citizens Insurance Company of America (collectively, "Defendants") and alleges as follows:

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendants.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down, and the suffering of physical harm and impact and damages, within Plaintiff's business premises and/or within the immediate area surrounding and outside its business premises, Plaintiff shut the doors of its business to customers on March 22, 2020. Plaintiff's normal office hours were usually Monday from 7:00 a.m. to 4:00

1

p.m.; Tuesday from 9:00 a.m. to 5:00 p.m.; Wednesday from 1:00 p.m. to 6:00 p.m.; and Friday from 9:00 a.m. to 2:00 p.m.

3. Plaintiff's insurance policy provides coverage for all non-excluded business losses and thus provides coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been suffered and sustained, which losses are in an amount greater than $150,000.00.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants. Plaintiff is a dental office in New Jersey and a citizen of New Jersey. Defendant The Hanover Insurance Group, Inc. is a Massachusetts corporations with their principal place of business in Massachusetts. Defendant Citizens Insurance Company of America is a Michigan corporation with its principal place of business in Michigan. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6. The Court has personal jurisdiction over Defendants because at all relevant times they have engaged in substantial business activities in the State of New Jersey. At all relevant times, Defendants transacted, solicited, and conducted business in New Jersey through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New Jersey.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendants are a corporation that has

substantial, systematic, and continuous contacts in the State of New Jersey, and as a result is subject to personal jurisdiction in this District.

8. The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

**PARTIES**

9. At all relevant times, Plaintiff was authorized to do business and was doing business in the State of New Jersey, County of Mercer. Plaintiff operates, manages and owns a dental office. The office is located at 601 Ewing Street, Suite B-15, Princeton, NJ 08540 ("Insured Property"). Plaintiff is a citizen of New Jersey.

10. At all relevant times, Defendant Citizens Insurance Company of America is a property and casualty company. Defendant is a citizen of Howell, Michigan, being organized under the laws of the State of Michigan and with its headquarters and principal place of business at 808 N Highlander Way, Howell, MI 48843. On information and belief Citizens Insurance Company of America is a member of The Hanover Insurance Group, Inc.

11. At all relevant times, Defendant The Hanover Insurance Group, Inc. is a property and casualty company. Defendant is a citizen of Massachusetts, being organized under the laws of the Commonwealth of Massachusetts and with its headquarters and principal place of business at 440 Lincoln Street, Worcester, Massachusetts 01653.

12. Defendants issued an insurance policy with Policy Number OBY-D429833-02 to Plaintiff for the period November 16, 2019 to November 16, 2020. *See* Policy Declaration, attached hereto as Exhibit 1. Defendants transacts business of insurance in the State of New Jersey and within the County of Mercer, and the basis of this suit arises out of such conduct.

**FACTUAL BACKGROUND**

I. **Insurance Coverage**

3

13. Defendants entered into a contract of insurance with Plaintiff, whereby Plaintiff agreed to make payments to Defendants in exchange for Defendants' promise to indemnify Plaintiff for losses including, but not limited to, business income losses at Plaintiff's Insured Property.

14. The Insured Property is covered under a policy issued by Defendants. *See* Ex. 1 (hereinafter "Policy").

15. The Policy provides, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages.

16. Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures for a variety of reasons, including by order of Civil Authority.

17. Under the Policy, business interruption insurance coverage is extended to apply to, *inter alia,* the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred.

18. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

19. Based on information and belief, Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown from a virus pandemic.

## II. The Coronavirus Pandemic

20. The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured

Property would be a direct physical loss requiring remediation to clean the surfaces of the offices and retail store constituting the Insured Property.

21. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited May 9, 2020).

22. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**III.   Civil Authority**

25. On March 9, 2020, New Jersey Governor Philip Murphy issued a Proclamation of Public Health Emergency and State of Emergency, the first formal recognition of an emergency situation in the State of New Jersey as a result of COVID-19. *See* Executive Order No.103, herein attached as Exhibit 2.

26. On March 16, 2020, Governor Murphy issued an Order requiring all non-essential businesses in the State of New Jersey to cease operations and close all physical locations. Businesses that were permitted to remain open were "may remain open if they limit their occupancy to no more than 50 persons and adhere to social distancing guidelines." *See* Executive Order No.104, herein attached as Exhibit 3.

27.    On March 21, 2020, Governor Murphy issued a Stay-at-Home Order for residents of New Jersey. *See* Executive Order No.107, herein attached as Exhibit 4. The Order required that "brick-and-mortar premises of all non-essential retail businesses[1] must close to the public as long as this Order remains in effect."

28.    On March 23, 2020, Governor Murphy issues an Order Suspending All Elective Surgeries and Invasive Procedures, requiring that "all elective surgeries performed on adults, whether medical or dental, and all elective invasive procedures performed on adults, whether medical or dental, are suspended in the State." *See* Executive Order No.109, herein attached as Exhibit 5.

29.    The New Jersey Assembly passed a bill on March 16, 2020 that would provide "a mechanism by which certain businesses that suffer losses due to interruption as a result of the coronavirus disease 2019 pandemic may recover those losses from their insurer if they had a policy of business interruption insurance in force on March 9, 2020, the date on which the Governor declared a Public Health Emergency and State of Emergency in Executive Order 103."[2]

30.    Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their

---

[1] The Order enumerated essential businesses as follows: Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment of foods comparable to what exists at a grocery store; Pharmacies and alternative treatment centers that dispense medicinal marijuana; Medical supply stores; Retail functions of gas stations; Convenience stores; Ancillary stores within healthcare facilities; Hardware and home improvement stores; Retail functions of banks and other financial institutions; Retail functions of laundromats and dry-cleaning services; Stores that principally sell supplies for children under five years old; Pet stores; Liquor stores; Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics; Retail functions of printing and office supply shops; and Retail functions of mail and delivery stores.  *See* Exhibit 4.

[2] The bill was pulled from a March 23, 2020 New Jersey Senate vote. "The measure's sponsor, Assemblyman Roy Frieman, D-16th District, told NJBIZ that he wanted to give insurance companies more leeway with changing their policies to include pandemics." https://njbiz.com/murphy-expected-sign-host-bills-alleviate-covid-19s-economic-impacts/ (last visited May 9, 2020).

credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

  31. The President is articulating a few core points:

   a. Business interruption is a common type of insurance. It applies to a variety of business establishments, including dental practices as the Plaintiff's.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

7

32. On April 7, 2020, and then on May 6, 2020 Governor Murphy issued Executive Orders declaring that the Public Health Emergency declared in Executive Order No. 103 continues to exist and that all Executive Orders responding to the Public Health Emergency presented by the COVID-19 outbreak remain in full force and effect. *See* Executive Order No. 119 and 138, attached herein as Exhibit 6 and 7, respectively.

33. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

### IV. Impact to Plaintiff

34. As a result of the Orders referenced herein, Plaintiff is no longer able to offer dental services except for emergency treatment.

35. The Insured Property is more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to other facilities with open-air ventilation.

36. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the patients and the staff require them to work in close proximity to the property.

37. The virus is physically impacting the Insured Property. Any effort by Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

38. A declaratory judgment determining that the coverage provided under the Policy will prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the

8

business due to the shutdown caused by the civil authorities' response is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION
## DECLARATORY RELIEF

39. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

40. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see* also Valeant Pharm. Int'l, Inc. v. AIG Ins. Co. of Canada, 2019 WL 1590896, at *6 (D.N.J. Apr. 12, 2019*); City of Asbury Park v. Star Ins. Co.*, 2018 WL 1469056, at *4 (D.N.J. Mar. 26, 2018).

41. An actual controversy has arisen between Plaintiff and Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendants disputes and denies, *inter alia,* that:

    a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

    b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c. The Orders trigger coverage;

    d. The Policy provides coverage to Plaintiff for any current and future closures in New Jersey due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters;

    e. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

      f. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

42. Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property.

43. Plaintiff further seeks a Declaratory Judgment to affirm that the Orders trigger coverage.

44. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future closures of businesses such as Plaintiff's in New Jersey due to physical loss or damage from the Coronavirus and/or the pandemic and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

45. Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Property, amount of damages, or any other remedy other than declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

    a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

    b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

    c. For a declaration that the Orders trigger coverage under the Policy.

    d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus.

    e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

   f. For such other relief as the Court may deem proper.

## **TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.

Dated: May 11, 2020

                  Respectfully submitted,

                  */s/ Michael M. Weinkowitz*
Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
Michael M. Weinkowitz, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com
mweinkowitz@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

W. Daniel "Dee" Miles, III, Esq.
Rachel N. Boyd, Esq.
Paul W. Evans, Esq.
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*